UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK P. GENDRON,

          Plaintiff,                             Hon. Robert J. Jonker

v.                                         Case No. 1:22-cv-376

GREGORY J. MCCOY, et al.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss.    (ECF No. 33).
Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants'
motion be granted and this action terminated.

## BACKGROUND

Plaintiff initiated this action on September 15, 2021, in the United States District
Court for the Middle District of Tennessee, against Cunningham Dalman PC and one its
shareholders Gregory J. McCoy.    (ECF No. 1).    The case was subsequently transferred
to this Court.    (ECF No. 24-25).    In his complaint, Plaintiff alleges the following.

On July 22, 2021, Defendant McCoy authored a letter to Norman and Lorraine
Sunamoto, who are "family members on [Plaintiff's] wife's side" of the family.    The letter
falsely stated that Cunningham Dalman was "involved in a lawsuit against Derek
Gendron."    The letter further made the "reckless" comment that Plaintiff "falsely

-1-

claimed" that he resided at the Sunamoto's address.    Furthermore, Defendant McCoy included with this letter a copy of Plaintiff's "confidential driver's license report."

Based upon this event, Plaintiff asserts the following claims: (1) invasion of privacy; (2) legal malpractice; (3) libel/defamation; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) bad faith; (7) negligent misrepresentation; (8) violation of the Drivers Privacy Protection Act of 1994; (9) violation of Michigan laws regarding the use of information contained in an individual's driver's report; (10) malicious prosecution and abuse of process. Defendants now move to dismiss Plaintiff's complaint.    Plaintiff has responded to the motion.    The Court finds that oral argument is unnecessary.    *See* W.D. Mich. LCivR 7.2(d).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief.    *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).    As the Supreme Court more recently held, to survive a motion to

dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.    Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.

*See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

## ANALYSIS

### I.    Background

Defendants have provided a bit more background on the events and circumstances referenced in Plaintiff's complaint, which give rise to this action.

In 2020, Joseph Quinlan initiated an arbitration proceeding against Derek Paul.[1] (ECF No. 34-2 – 34-7, PageID.67-93).   Following arbitration, Quinlan was awarded $9,300.00 against Plaintiff and his company, Semper Fi Services.   (ECF No. 34-8, PageID.96).   On September 21, 2020, Quinlan, represented by Defendant McCoy, initiated legal action against Plaintiff and Semper Fi Services to confirm the arbitration award and enter judgment against Plaintiff and his company.   (ECF No. 34-11, PageID.103-07).

---

[1] Derek Paul has been adjudicated to be "one and the same person as Derek Paul Gendron," the plaintiff in this matter.   (ECF No. 34-30, PageID.236).

Quinlan experienced difficulty accomplishing service on Plaintiff, however. (ECF No. 34-13, PageID.111).   As Plaintiff eventually conceded, he "left the State of Michigan" in July 2018 and took his "residence on the road."   (ECF No. 34-14, PageID.113).   On November 14, 2020, Plaintiff authored a letter to Defendant McCoy threatening to file a "bar complaint" with the State of Michigan and, moreover, to seek sanctions against him for filing "bogus" claims.   (ECF No. 34 -15, PageID.115).

On December 28, 2020, the claims against Plaintiff were dismissed for failure to timely effect service.   (ECF No. 34-16, PageID.118).   The claims against Semper Fi Services were not dismissed, however, and on May 6, 2021, default judgment was entered against Semper Fi Services in the amount of $9,700.00.   (ECF No. 34-17, PageID.120).   On July 7, 2021, Semper Fi Services moved to set aside the default judgment.   (ECF No. 34-17 – 34-19, PageID.122-37).

In an attempt to locate Plaintiff so that service could be accomplished, Defendant McCoy, on July 19, 2021, obtained from the Michigan Secretary of State a Driver Record Information report regarding Plaintiff.[2]   (ECF No. 34-20, PageID.140-43).   On July 22, 2021, McCoy authored the previously mentioned letter to Norman and Lorraine Sunamoto.   (ECF No. 34-20, PageID.139).   The contents of the letter, in its entirety, are as follows:

> My office is involved in a lawsuit against Derek Gendron.   Based on the enclosed records from the Michigan Secretary of State, he

---

[2] Contrary to Plaintiff's assertions, it is legal under Michigan law to use and disclose this information "for use in connection with a civil. . .proceeding in a federal, state, or local court. . .including use for service of process. . ."   Mich. Comp. Laws § 28.298(d).

> had a driver's license that showed your residence at 42519
> Bradner Road, Northville, MI was his residence.  This does not
> appear consistent with the real estate records showing that you
> own this home.  It was possible he was either a renter or he
> falsely claimed that your property was his home.   Can you please
> contact my office and let me know if you know anything about this
> individual?   I appreciate your anticipated cooperation with this
> matter.

(ECF No. 34-20, PageID.139).

On August 10, 2021, Quinlan, again represented by Defendant McCoy, re-asserted his action against Plaintiff.   (ECF No. 134-24, PageID.184-89).   Service was accomplished on Plaintiff the following month in Tennessee.   (ECF No. 34-25 – 34-27, PageID.191-207).

## II.    Choice of Law

This matter was initiated in federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332.   When jurisdiction is premised on diversity, this Court must apply the substantive law as articulated by the highest court of the state whose laws govern the outcome.   *See, e.g., Carhartt, Inc. v. Innovative textiles, Inc.*, 998 F.3d 739, 742 (6th Cir. 2021).   There appears to be a question as to the substantive law governing this action as Plaintiff purportedly asserts claims under both Michigan and Tennessee law.

A federal court sitting in diversity "must apply the choice-of-law rules of the forum state."   *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 389 (6th Cir. 2017) (citation omitted).   But because this action was initiated in Tennessee and subsequently transferred to Michigan, the determination of which state is properly characterized as the forum state is not immediately apparent.

Generally, when a case is transferred from one court to another, the transferee court must apply the choice of law rules of the transferor court.  *See, e.g., Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (citations omitted).  But, if a case is transferred for lack of jurisdiction, the choice of law rules of the state in which the transferee court sits apply.  *See, e.g., Statek Corp. v. Coudert Bros. LLP*, 2018 WL 834227 (D. Conn., Feb. 12, 2018) ("a plaintiff cannot file suit in a court without personal jurisdiction over the defendant and then use 'the accident' of federal diversity jurisdiction to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed"); *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015) (same); *National Staffing Solutions, Inc. v. National Staffing Specialists, LLC*, 2020 WL 6149916 at *5-6 (D. Utah, Oct. 20, 2020).

This action was transferred to this Court because the Middle District of Tennessee determined that it could not exercise personal jurisdiction over Defendants.  (ECF No. 24-25).  Accordingly, the Court finds that Michigan's choice of law rules apply in this matter.  Under Michigan's choice of law rules, Michigan law governs an action unless there exists a "rational reason to do otherwise."  *Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).  To assess whether there exists a rational reason to displace Michigan law, the Court undertakes a two-part analysis. The Court must first determine whether any other state has an interest in having its law applied.  If no state has such an interest, Michigan law is applied.  But, if another

state has an interest in having its law applied, the Court must determine if "Michigan's interests mandate the Michigan law be applied, despite the foreign interests." *Ibid.*

The conduct giving rise to this action occurred within the state of Michigan. Defendants, all Michigan residents, sent the letter in question to other Michigan residents.   The only connection these events have to the state of Tennessee is that this is where Plaintiff now purports to reside.   The Court finds that such does not constitute a rational reason, or a sufficient interest, to apply Tennessee law.   Moreover, it would violate Defendants' due process rights to apply Tennessee law in this matter because there do not exist sufficient contacts with the state of Tennessee to justify applying its law in this matter.   *See, e.g., Sutherland v. Kennington Truck Service, Ltd.*, 562 N.W.2d 466, 472 (Mich. 1997).   Accordingly, the Court will apply Michigan substantive law to Plaintiff's various state law claims.

## III.   Invasion of Privacy

Plaintiff asserts that the act of sending the July 22, 2021 letter to Norman and Lorraine Sunamoto constituted an invasion of his privacy.   Michigan law protects against four distinct types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or private affairs; (2) public disclosure of embarrassing private facts; (3) publicity that places the plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness.   *See Lansing Association of School Administrators v. Lansing School District Board of Education*, 549 N.W.2d 15, 20 (Mich. Ct. App. 1996).

Plaintiff does not indicate which type of invasion of privacy he allegedly experienced.   Nonetheless, considering that Plaintiff neither alleges that he suffered publicity or public disclosure of private matters nor that Defendants appropriated his name or likeness, the Court finds that Plaintiff has asserted a claim for intrusion upon his private affairs.   To prevail on this claim, Plaintiff must establish three elements: (1) the existence of a secret and private subject matter; (2) that he possessed the right to keep that subject matter private; and (3) Defendants obtained the information in question by means "objectionable to a reasonable man."   *Dalley v. Dykema Gossett*, 788 N.W.2d 679, 687 (Mich. Ct. App. 2010).

Even if the Court assumes that Plaintiff's allegations satisfy the first element, Plaintiff has failed to allege that he had the right to keep the information referenced in Defendants' letter to Norman and Lorraine Sunamoto private or that Defendants obtained the information in question by means that a reasonable person would find objectionable.   Plaintiff's allegations, therefore, fail to state a claim for invasion of privacy.   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## IV.    Legal Malpractice

Plaintiff alleges that Defendants, by making false claims about Plaintiff, committed "legal malpractice."   This claim fails because Plaintiff does not allege that he had an attorney-client relationship with Defendants.   *See, e.g., Bowden v. Gannaway*,

871 N.W.2d 893, 895 (Mich. Ct. App. 2015).    Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## V.    Libel/Defamation

As noted above, the address Plaintiff identified to the Michigan Secretary of State corresponded to property owned by somebody other than Plaintiff.    Regarding this apparent discrepancy, the letter Defendants wrote to Norman and Lorraine Sunamoto contained the following sentence, "[i]t was possible [Plaintiff] was either a renter or he falsely claimed that your property was his home."    Plaintiff alleges that this statement constitutes libel or defamation.

Under Michigan law, the elements of libel and defamation are the same: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication.    *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005) (defamation); *Locricchio v. Evening News Association*, 476 N.W.2d 112, 116 (Mich. 1991) (libel).

First, it must be noted that the statement at issue is not an affirmative statement of fact; neither is it properly characterized as an opinion.    The statement is phrased as an inquiry, which, arguably, implies that Plaintiff either (1) resided with the Sunamoto family as a renter or (2) falsely claimed their property as his residence.    Michigan does recognize a cause of action for defamation by implication.    *See Reighard v. ESPN, Inc.*,

-10-

- - - N.W.2d - - -, 2022 WL 1513112 at *5 (Mich. Ct. App., May 12, 2022).    To prevail on such a claim, Plaintiff must establish that the defamatory implication is materially false."    *Ibid.*

Ultimately, whether the subject statement is considered a statement of fact or an inquiry that implies a statement of fact, the result is the same.    First, the statement or implication that Plaintiff lived with the Sunamoto family as a renter is not defamatory because it does not tend to harm Plaintiff's reputation or deter third persons from associating with Plaintiff.    *See, e.g., Kevorkian*, 602 N.W.2d at 236.    Furthermore, Plaintiff does not allege that this statement or implication is false.

Likewise, regarding the statement or implication that Plaintiff falsely claimed the Sunamoto residence as his own, the Court again finds that such is not defamatory because it does not tend to harm Plaintiff's reputation or deter third persons from associating with Plaintiff.    *See, e.g., Kevorkian*, 602 N.W.2d at 236.    Moreover, even if this statement or implication is considered defamatory, the result is the same because Plaintiff has not alleged that this statement or implication is false.    Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## VI.    Intentional Infliction of Emotional Distress

Plaintiff alleges that the "bold publication of false statements" by Defendants is "reckless and so outrageous that it would shock the conscience of any lay person." Plaintiff asserts that Defendants, by sending the letter in question to the Sunamoto family, committed the tort of intentional infliction of emotional distress.

To prevail on this claim, Plaintiff must establish the following: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.  *See Swain v. Morse*, 957 N.W.2d 396, 411 (Mich. Ct. App. 2020).   Liability for this tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."   Rather, Plaintiff must show that Defendant's conduct "is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."   It is for the Court to initially determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."   Neither the contents of the letter in question, nor the act of sending it to the Sunamoto family, come even remotely close to satisfying this standard.

As discussed above, Defendants were seeking to determine Plaintiff's residence or location so that service of process could be accomplished.   It must be remembered that Plaintiff, by his own admission, had taken his "residence on the road" making it difficult to determine where or how to accomplish service.   In this context, it was quite reasonable for Defendants to obtain Plaintiff's Driver Record Information report. Likewise, it was reasonable for Defendants to contact the Sunamoto family to inquire about the nature of their relationship, if any, with Plaintiff.

Michigan courts routinely reject claims for intentional infliction of emotional distress for conduct far worse than what is alleged here.   For example, in *Heffelfinger v. Bad Axe Public Schools*, 2011 WL 118772 (Mich. Ct. App., Jan. 13, 2011), a school

-12-

superintendent made statements accusing a male teacher of "inappropriate conduct toward a female student and drinking alcohol with underage students outside of school." *Id.* at *1.   The court concluded that "we do not find that the challenged statements rise to the level of extreme or outrageous conduct. . ."   *Id.* at *6.   Furthermore, Plaintiff has failed to allege facts which, if proven, would establish that Defendants acted with intent or recklessness.   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## VII.   Negligent Infliction of Emotional Distress

Plaintiff next asserts that Defendants' conduct constitutes negligent infliction of emotional distress.   This claim fails because Plaintiff has not alleged that he "witnesse[d] negligent injury to a third party and suffer[ed] mental disturbance as a result."   *Urbanowicz v. Trinity Health – Michigan*, 2021 WL 5021769 at *3 (Mich. Ct. App., Oct. 28, 2021).   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## VIII.  Bad Faith

Plaintiff alleges that Defendants' conduct constitutes "bad faith."   The Court can locate no Michigan authority supporting a cause of action for "bad faith."   Plaintiff has likewise failed to identify any such authority.   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## IX.    Negligent Misrepresentation

Plaintiff next alleges that Defendants' conduct constitutes negligent misrepresentation.   To prevail on this claim, Plaintiff must establish that he "justifiably and detrimentally relied on information provided without reasonable care by one who owed the plaintiff a duty of care."   *Waun v. Universal Coin Laundry Machine, LLC*, 2006 WL 2742007 at *5 (Mich. Ct. App., Sept. 26, 2006).   Plaintiff has failed to allege that he relied on information provided by Defendants or that Defendants owed him a duty of care.   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## X.    Driver's Privacy Protection Act

Plaintiff alleges that Defendants violated his rights under the Driver's Privacy Protection Act, a federal statute governing the privacy and disclosure of personal information compiled by the states.   While this statute generally prohibits the disclosure of an individual's personal information, an exception is recognized when such disclosure is "in connection with any civil. . .proceeding in any Federal, State, or local court. . .including the service of process. . ."   18 U.S.C. § 2721(b)(4).   As already discussed, Defendants obtained and utilized personal information about Plaintiff from the Michigan Secretary of State as part of a state court civil action involving Plaintiff. Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## XI.    Michigan Driver's Report Law

Plaintiff further asserts that by obtaining his driver's license information, Defendants violated his rights under numerous Michigan laws.   Specifically, Plaintiff asserts that Defendants violated Michigan Compiled Laws §§ 28.295a, 257.902, 257.903, 324.80130d, 324.80319a, and 324.82160.

Sections 28.295a and 257.903 articulate the penalties applicable if a person "uses personal information" for a purpose not permitted by Michigan law.   As previously noted, however, it is legal under Michigan law to use and disclose this information "for use in connection with a civil. . .proceeding in a federal, state, or local court. . .including use for service of process. . ."   Mich. Comp. Laws § 28.298(d).   Section 257.902 is inapplicable as Plaintiff has failed to allege or demonstrate that Defendants committed a violation of the Michigan Vehicle Code which would constitute a felony.   Sections 324.80130d, 324.80319a, and 324.82160 are inapplicable as they concern watercraft and snowmobiles, items regarding which Plaintiff has asserted no facts.   Accordingly, the undersigned recommends that as to this claim, Defendants' motion be granted.

## XII.    Malicious Prosecution/Abuse of Process

Finally, Plaintiff asserts that Defendants have subjected him to malicious prosecution and abuse of process.   While malicious prosecution claims generally arise in the context of criminal prosecutions, Michigan does recognize a malicious prosecution claim in the context of civil actions.   *See, e.g., Bloch v. Bloch*, 2013 WL 951076 at *3 (Mich. Ct. App., Mar. 7, 2013).   Plaintiff's claim fails, however, because he has failed to

allege that the civil action initiated against him was resolved in his favor or that there did not exist probable cause to initiate such proceedings. *Ibid.* Plaintiff's abuse of process claim likewise fails because Plaintiff has failed to allege that Defendants committed "an act in the use of process which is improper in the regular prosecution of the proceeding." *Lawrence v. Burdi*, 886 N.W.2d 748, 754 (Mich. Ct. App. 2016). Accordingly, the undersigned recommends that as to these claims, Defendants' motion be granted.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 33) be granted and this action terminated.   For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 21, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge